IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RASHAUN M. RAMSEY, | ) | CASE NO. 1:17 CV 545 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| CHRISTOPHER LaROSE, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

Petitioner Rashaun Ramsey, a prisoner in state custody, has filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. section 2254, challenging the constitutionality of his

convictions and sentences in *State v. Ramsey*, Case No. 14-CR-343. (R. 1.) Respondent Warden

Christopher LaRose[1]  has filed a return of writ. (R. 5.) Ramsey has filed a traverse. (R. 7.) This

matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for

preparation of a report and recommendation. The court recommends Ramsey's petition be

denied, for the reasons set forth below.

## FACTUAL BACKGROUND

Ohio's Fifth District Court of Appeals set forth the following facts underlying Ramsey's

convictions:

{¶ 2} On June 5, 2014, the Richland County Grand Jury indicted appellant on one
count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, two

---

[1]  Christopher LaRose is the warden of the Trumbull Correctional Institution in Leavittsburg, Ohio,
where Ramsey is incarcerated. (R. 1 at 1.)

counts of kidnapping in violation of R.C. 2905.01(A)(3) and (4), felonies of the first degree, one count of possession of heroin in violation of R.C. 2925.11(A) & (C)(6)(a), a felony of the fifth degree, one count of possession of cocaine in violation of R.C. 2925.11(A) & (C)(4)(a), a felony of the fifth degree, and one count of failure of sexually oriented offender to notify of change of address in violation of R.C. 2950.05(F)(1), a felony of the first degree. The indictment included sexually violent predator specifications with respect to the rape and kidnapping counts, sexual motivation specifications with respect to the kidnapping counts, and forfeiture specifications with respect to the drug possession counts. At his arraignment on June 10, 2014, appellant entered a plea of not guilty.

{¶ 3} Appellant, on July 21, 2014, filed a motion asking that the sexually violent predator and sexual motivation specifications be tried to the court. Pursuant to a Judgment Entry filed on July 31, 2014, the trial court granted such motion.

{¶ 4} At the jury trial, Jessica Fields testified that until March 21, 2014, she was living at 201 Rowland Avenue with appellant, Kaitlyn Maher, Michael Ewers and Ashley Siezel. She testified that she met appellant when she bought heroin from him about a year earlier. According to Fields, Maher, Siezel, and Ewers also used drugs that they obtained from appellant. She testified that from the time she met appellant until March 21, 2014, she did not buy drugs from anyone else and that no one other than appellant brought drugs into the house. Appellant was in charge of the drugs and, according to Fields, if any of the drugs disappeared, appellant would beat them up.

{¶ 5} At trial, Fields, who was asked what a "trap house" was, testified that it was a house where drugs were sold and that 201 Rowland was a trap house. Fields testified that in 2013, she rented an apartment on Park Avenue West in Mansfield and that the money for the rent came from appellant. She testified that a number of others lived in the apartment also and did whatever appellant wanted them to do in exchange for free drugs. Appellant also provided the money for the house on Rowland Avenue. Fields testified that she gave appellant her money because he would beat her up and she was afraid of him. Trial Transcript at 98. When asked, she stated that she was not free to leave 201 Rowland Avenue other than to go to work. She testified that she was appellant's main girlfriend, but was aware that he was sexually involved with the victim in this case. When she confronted the victim, the victim called appellant and told him. Fields testified that when appellant came home "he made us all line up and he smacked me." Trial Transcript at 99. She testified that appellant had smacked her before in front of people to humiliate her and had pistol-whipped her.

{¶ 6} After the house on Rowland Avenue was raided on March 21, 2014, appellant's mother and family took the furnishings and belongings from the house, leaving only Fields' belongings behind. Fields testified that on either March 21,

2014 or March 22, 2014, appellant called her from the jail. Fields testified that she was sick because she did not have heroin and that appellant told her that her "medicine" was in the Pack 'n Play at 201 Rowland Avenue. She found approximately seven grams of heroin when she looked.

{¶ 7} Fields testified that on March 20, 2014, appellant received a phone call from someone about H.S., the victim in this case. The caller told appellant that H.S. was working with METRICH, a drug taskforce. Fields testified that H.S. arrived at 201 Rowland Avenue around 10:00 a.m. or 11:00 a.m. and that appellant asked her about METRICH. H.S., according to Fields, told appellant that they were asking about someone else. Appellant then asked Fields to go and pick up Stephanie Smith, the person who had called him and accused H.S. Fields was gone 15 or 20 minutes. When she got back, appellant confronted Smith and H.S. After it was determined that H.S. was telling the truth, everyone stayed for a couple of hours using the heroin and crack that appellant had provided.

{¶ 8} At trial, Fields testified that appellant used the attic space at 201 Rowland Avenue and that there was cable TV up there. She testified that appellant's friends from Cleveland stayed up there frequently and that appellant would go to Cleveland and get them on a weekly basis. Appellant was then gone a day or two. Fields testified that a number of people did work for appellant to get free drugs.

{¶ 9} The next witness to testify was H.S. H.S. testified that Fields introduced her to appellant and that she purchased drugs from appellant daily and did not buy from anyone else. She testified that on March 20, 2014, she was driving when appellant's brother, Robert Ramsey, hit her vehicle with his vehicle. She then went to 201 Rowland Avenue because "he told me to and I was scared." Trial Transcript at 236. When H.S. arrived, she was questioned by appellant about her alleged involvement with the METRICH drug taskforce. After Mike Ewers voiced concerns that H.S. might be wired, she was searched. The following testimony was adduced when she was asked if she had gone to 201 Rowland Avenue to by drugs:

{¶ 10} No.

{¶ 11} Q: Did you walk in and put $60 on the table and say you needed some drugs?

{¶ 12} A: Not initially. But I did put $60 down, trying to reassure him that nothing's different, nothing's up, like I will use so it doesn't look like I'm going over there to set him up.

{¶ 13} Q: Okay. So—

{¶ 14} A: If I didn't get high, I would look suspicious, like I was working for them.

{¶ 15} Trial Transcript at 239.

{¶ 16} H.S. testified that after Fields left with another woman to pick up Stephanie Smith, appellant told her to go upstairs to the attic. H.S. was crying because she was concerned that appellant was going to shoot her due to the rumors that she was working with METRICH. Appellant then told her to stop crying because "you already know what this is." Trial Transcript at 241. H.S. then knew that appellant expected her to have sex with him. When asked, she testified that she had had sex with appellant many times before, but that the sex was not voluntary because "[y]ou can't tell him no." Trial Transcript at 241. She testified that appellant had hurt her before and that she had never told him no. H.S. testified that she told Fields and other girls that appellant was forcing himself on her and that, as a result, appellant lined them up and smacked all three of them. When asked if appellant had hit her before, she testified that he had hit her at a gas station and that after that, appellant acted like he could do whatever he wanted.

{¶ 17} According to H.S., appellant shoved her up the stairs, had her take her pants down and then pulled and ripped her panties off of her. Appellant told her to quit crying. After appellant caught H.S. looking at a knife in her purse, he turned her around, pushed her down and forced his penis inside her. She testified that he laid on top of her from behind and put his penis inside her vagina against her will. Appellant jumped up and ran downstairs when he heard Fields' car return after throwing a rag at H.S. and telling her to clean herself up. After cleaning herself up, she went downstairs where Stephanie Smith told H.S. that she heard that H.S. was talking to METRICH about appellant. According to H.S., appellant was "pretty mad" and she felt that she could not leave because she did not want appellant to think that she was a snitch. Trial Transcript at 249. H.S. did not tell anyone at the house that day that she had been raped by appellant because "[t]he last time I talked about it, I got smacked." Trial Transcript at 251. She testified that she was present on the day that Fields was pistol-whipped by appellant and that she knew appellant to have guns. While appellant did not have a gun with him on the day of the incident, she worried about what he might do.

{¶ 18} H.S. testified that she eventually told appellant and others at 201 Rowland Avenue that she had to go to New Beginnings that day for treatment. After leaving, she went to the probation department, although she was not scheduled to go there that day, to report the rape. A probation officer accompanied her to the hospital and stayed with her until her examination. While waiting for an examination, H.S. spoke with various law enforcement personnel. She testified that prior to such time, she had not been working with METRICH, but was tired and scared of the drug lifestyle and was "[t]ired of being hurt." Trial Transcript at 263. According to H.S., appellant made her do things that she did not want to do, such as buying bullets, dropping off drugs and coming over all hours of the night and trying drugs. She testified that she could not refuse appellant. She admitted that she took a gun and a

4

radio to 201 Rowland Avenue to trade for drugs and that she sold a car to appellant who paid partially in heroin. Appellant, to whom H.S. owed money, knocked some money off her debt.

{¶ 19} H.S., on cross-examination, testified that she did not always buy heroin from appellant, but that he sometimes gave it to her in exchange for doing things. She further testified that appellant made her have sex with him in front of her cousin and then made her cousin have sex with him in front of her. H.S., who was using heroin at the time, did not report this to the police. On redirect, she testified that it would not have done any good to tell anyone at the house on March 20, 2014 that appellant had raped her. She admitted that a probation violation had been filed against her for failing to report to her probation officer. When asked what would have happened to her if she had purchased drugs off of someone other than appellant, H.S. testified that she was unsure because she was not allowed to do so.

{¶ 20} Luke Mayer, a probation officer, testified that on March 20, 2014, he met with H.S. who came in around 3:30 p.m. He testified that she was very upset and was crying and did not appear to be high. Mayer testified that she immediately told him what had happened and that law enforcement was then contacted. He testified that he had seen appellant one time before on March 11, 2014 when he was out nearby at 200 Rowland on another matter. On cross-examination, he admitted that it would surprise him that H.S. had testified that she had used $60.00 worth of crack cocaine on March 20, 2014. He also testified that on March 20, 2014, there was a probation violation pending against her for failure to show up for her placement in a facility. On redirect, he testified that he did not see any signs of intoxication from H.S.

{¶ 21} The next witness to testify was Detective Steve Blust, who is assigned to the METRICH Enforcement Unit. He testified that he had heard about appellant, but did not know his name until April of 2013. Detective Blust received information about 40 times between April of 2013 and March of 2014 that appellant was in and about Richland County at six or seven different addresses, including 201 Rowland Avenue. Detective Blust testified that he went to the hospital on March 20, 2014 with Agent Yingling from the FBI and Detective Dave Scheurer and interviewed H.S. who was "upset, scared, crying." Trial Transcript at 364. Based on the information that they received, a decision was made to execute a search warrant at 201 Rowland Avenue. During the search, a spoon with residue on it and a money roll in a baggy with a rubber band around it was found. The roll contained $4,450.00. The Detective testified that drug dealers often package money in such a manner. A notebook with names and phone numbers was also found as was a wallet belonging to appellant. During the search, syringes, a baggy containing powder, four white pills, bullets and a number of cell phones were also found. Detective Blust testified that prior to the raid, the occupants at 201 Rowland Avenue were tipped off by the landlord.

5

{¶ 22} On cross-examination, Detective Blust testified that prior to the night in question, he had seen appellant in Richland County four or five times, but had not seen him at 201 Rowland Avenue. When asked if he found any quantity of drugs inside 201 Rowland Avenue, he testified that a "little bit" was found and that it was enough to test. Trial Transcript at 397. According to him, the amount of cocaine found was enough to get high on. Detective Blust further testified that appellant, during execution of the search warrant, was observed trying to climb out of a bathroom window in his underwear with no shoes on. On redirect, he testified that texts on the phones were directed to appellant.

{¶ 23} Travis Dean, H.S.'s probation officer, testified that he had contact with her on March 20, 2014 and that she looked terrified and was frantic. H.S., who was not due to report that day to probation, told him that she had been raped. He testified that they drove her to the front door of the ER and dropped her off. When H.S. came in on March 20, 2014, she had a probation violation pending.

{¶ 24} Photographs of the vehicle that H.S. was driving on March, 20, 2014, which were taken by law enforcement and admitted, showed scraping to the rear passenger side quarter panel. The owner of the vehicle verified that the damage was not there before.

{¶ 25} At trial, Jennifer Stump, a sexual assault nurse examiner, testified that she performed an examination on H.S. on March 20, 2014. The examination results were consistent with vaginal penetration. Testimony was adduced at trial that the DNA of the sperm recovered matched appellant's profile. In addition, testimony was adduced that the spoon with residue on it found at the scene tested positive for heroin and the cocaine was located in a baggy.

{¶ 26} Mike Ewers, appellant's friend, testified that he had been living with appellant and Fields since February of 2014 at 201 Rowland Avenue. He testified that he bought drugs off of appellant and stole items that he traded to appellant for drugs. Appellant also had Ewers deliver drugs for him and answer the door most of the time. According to Ewers, after appellant started questioning H.S. about METRICH, she placed $60.00 on the table and stated that she wanted to get high because she had to report to New Beginnings. When he first saw H.S. coming down from the attic, she was acting "like she was trying to get out of there." Trial Transcript at 754. H.S. then went into a bedroom to get high on crack.

{¶ 27} When asked whose drugs were in the house, Ewers testified that the drugs were appellant's and that even though he would buy drugs off of a man named Moan at 201 Rowland Avenue, the drugs were appellant's. All of the drugs that came in to 201 Rowland Avenue were controlled by appellant. According to Ewers,

anyone who bought drugs off of anyone other than appellant was in trouble. The following is an excerpt from his testimony:

{¶ 28} Q: Were you present on an occasion where the defendant lined up Jessica, Heather and Angie Garris?

{¶ 29} A: I was there, but I wasn't in the room at the time in the exact room. I was in my room. His room was beside mine. I was in my room getting high.

{¶ 30} Q: Could you hear what was going on?

{¶ 31} A: I could hear him, yelling back, talking back and forth and yelling and that. They was talking about the incident before Shaune even showed up when he was out doing something. They was talking about an incident about he was cheating on her or cheating on her with Heather and Angie. And they all got together to talk about it and was going to confront him, you know. And guess he was mentioning it to them and called them all into the bedroom.

{¶ 32} Q: And when they come out of the bedroom, how are they acting?

{¶ 33} A: Like scared to death.

{¶ 34} Trial Transcript at 759-760.

{¶ 35} Ewers further testified that there were a lot of girls around getting high and that he assumed that they were appellant's side girlfriends. When asked if he just made the assumption that it was all sex for drugs, Ewers testified that "I assumed at first that's what was happening, and then at the end it started to get to the point where it was so violent that it was ... It was a weird situation." Trial Transcript at 761. He testified that after the raid, appellant's family came from Cleveland and got all of appellant's stuff, which included couches and TVs. Appellant, according to Ewers, had paid the bills at 201 Rowland Avenue.

{¶ 36} On cross-examination, Ewers testified that H.S. came often to the address on Rowland Avenue prior to March 20, 2014 to buy drugs. He testified that on March 20, 2014, one of the first things that she did was take out $60.00 and indicate that she wanted to make a purchase. He stated that girls had sex with appellant in exchange for drugs. When asked if appellant got high, Ewers testified that he did not.

{¶ 37} After the State rested, appellant called Kayley Granger to the stand. She testified that she was at the Rowland Avenue address at least three times a week and that she saw H.S. there shooting up. She testified that, on March 20, 2014, she saw H.S. drive up herself and that she went outside to move a van to let H.S. park

7

in the driveway. According to Granger, H.S. "came in saying hi to everyone, happy, and she went straight upstairs." Trial Transcript at 835. She testified that when H.S. left after less than an hour, she seemed happy and normal, hugged her and kissed her on the check. Granger then backed her van out to allow H.S. to leave.

*State v. Ramsey*, No. 14CA90, 2015 WL 7428725, at *1-6 (Ohio Ct. App. Nov. 20, 2015).

These facts "shall be presumed to be correct," and Ramsey has the burden of rebutting

the presumption of correctness by clear and convincing evidence. **28 U.S.C. §** 2254(e)(1);

*Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998).

### PROCEDURAL BACKGROUND

#### A.    Trial Court

On June 5, 2014, the Richland County Grand Jury indicted Ramsey on the following

charges: one count of rape in violation of Ohio Rev. Code section 2907.02(A)(2), with a

sexually-violent-predator specification; two counts of kidnapping in violation of Ohio Rev. Code

section 2905.01(A)(3), (4), both carrying sexually-violent-predator and sexual-motivation

specifications; one count of possession of heroin in violation of Ohio Rev. Code section

2925.11(A), (C)(6)(a), with a forfeiture specification; one count of possession of cocaine in

violation of Ohio Rev. Code section 2925.11(A), (C)(4)(a), with a forfeiture specification; and

one count of failure of a sexually oriented offender to notify of change of address in violation of

Ohio Rev. Code section 2950.05(F)(1). (R. 5-1, Ex. 1.) Ramsey entered pleas of not guilty to all

charges. *Ramsey*, 2015 WL 7428725, at *1.

On July 21, 2014, Ramsey, through counsel, filed a motion requesting that the sexually-

violent-predator and sexual-motivation specifications be tried to the court and the State be

prohibited from referring to the specifications at trial, which the court granted. (R. 5-1, Exs. 2,

7.) On July 28, 2014, Ramsey filed a motion in limine moving the court to prevent the State from

referring to his prior conviction for rape, which the State opposed. (R. 5-1, Exs. 3, 5.) Ramsey also filed that day a motion to dismiss all charges with prejudice based on his right to a speedy trial, which the State also opposed. (R. 5-1, Exs. 4, 6.) On August 24, 2014, the trial court denied Ramsey's motion in limine because "the use of [Ramsey's] prior rape conviction [was] necessary in order to prove the elements contained in Count VI[,]" namely, failure of a sexually oriented offender to register. (R. 5-1, Ex. 8.)

The case proceeded to a jury trial on July 31, 2014. (R. 5-1, Ex. 30.) On August 6, 2014, the jury found Ramsey guilty of all charges. (R. 5-1, Exs. 9, 11.) On August 12, 2014, the court conducted a hearing regarding the specifications and found Ramsey guilty of the sexually-violent-predator and sexual-motivation specifications attached to the rape charge and one of the kidnapping charges. (R. 5-1, Ex. 9.)

On August 22, 2014, the trial court held a sentencing hearing. (R. 5-1, Ex. 11.) It sentenced Ramsey to eleven years to life imprisonment for the rape charge; nine years imprisonment for the kidnapping charge; twelve months imprisonment for each of the drug convictions; and three years imprisonment for the failure-to-register charge. (*Id.*) Ramsey also forfeited $4,550 to the State. (*Id.*) The sentences were to be served consecutively, for an aggregate sentence of twenty-five years to life in prison. (*Id.*) On September 4, 2014, the court issued a *nunc pro tunc* judgment entry to clarify that it had merged the rape charge and one of the kidnapping charges for purposes of sentencing. (R. 5-1, Ex. 12.)

Also on September 4, 2014, Ramsey moved for a new trial based on allegations that the victim lied on the stand, the State failed to disclose to the defense the names of potentially beneficial witnesses, and newly discovered evidence. (R. 5-1, Ex. 13.) The State opposed the

motion. (R. 5-1, Ex. 17.) The trial court denied the motion on October 17, 2014. (R. 5-1, Ex. 18.)

Ramsey moved for reconsideration, which the court also denied. (R. 5-1, Exs. 19, 21.)

**B.    Direct Appeal**

On November 13, 2014, Ramsey, through new counsel, filed a notice of appeal of the

trial court's judgment entries of August 22, 2014, and October 17, 2014. (R. 5-1, Ex. 22.) In his

appellate brief, Ramsey raised the following assignments of error:

1.    The trial court violated appellant's [d]ue [p]rocess rights to a fair trial under both the state and federal constitutions, Evid. R. 404(B), and Evid. R. 403 by permitting the prosecution to present evidence of other crimes, wrongs, or acts by appellant.

2.    The trial court violated appellant's [d]ue [p]rocess rights to a fair trial under both the state and federal constitutions, Evid. R. 404(B), and Evid. R. 403 by permitting the prosecution to present evidence that Ramsey had a prior rape conviction.

3.    The trial court erred by instructing the jury that it could infer the force element for rape from evidence that the defendant overcame the victim's will by fear or duress.

4.    Appellant's rights to due process under the state and federal constitutions were violated because his convictions for drug possession were not supported by sufficient evidence.

5.    The convictions for drug possession were not supported by the weight of the evidence.

6.    Appellant was deprived of his rights to due process and a fair trial under the state and federal constitutions by the cumulative effect of the numerous errors in this case.

(R. 5-1, Ex. 23.) The State filed a brief in response. (R. 5-1, Ex. 24.) On November 20, 2015, the

Ohio appellate court affirmed the trial court's judgment. (R. 5-1, Ex. 25.)

On December 31, 2015, Ramsey, acting *pro se*, filed a notice of appeal of the appellate court's judgment with the Ohio Supreme Court. (R. 5-1, Ex. 26.) In his memorandum in support of jurisdiction, he raised the following propositions of law:

1.  Is [d]ue [p]rocess violated and the opportunity for a fair trial removed when evidence is admitted at trial in violation of Evid. R. 404(B), Evid. R. 403 [and] Ohio's Rape Shield Law when the State is permitted to present evidence of other crimes, wrongs or acts by Appellant to include a prior rape conviction?

2.  Is the Appellant deprived of [d]ue [p]rocess and a fair trial when the jury is provided improper instruction on the element of force or threat of force?

3.  Is [d]ue [p]rocess violated when the evidence for drug possession was not supported by the manifest weight or sufficiency of the evidence?

4.  Is an appellant deprived of [d]ue [p]rocess under the Ohio and U.S. Constitutions when there are numerous errors that had a cumulative negative effect on the outcome?

(R. 5-1, Ex. 27.) The State filed a memorandum in response. (R. 5-1, Ex. 28.) On March 23, 2016, the Ohio Supreme Court declined to accept jurisdiction over the appeal and dismissed the case. (R. 5-1, Ex. 29.)

### FEDERAL HABEAS CORPUS

Ramsey, through counsel, filed the petition for writ of habeas corpus now before this court. (R. 1.) He asserts the following grounds for relief:

1.  Sixth and Fourteenth Amendment[s]. Petitioner was denied due process of law and a fair trial when the court permitted the prosecution to present evidence of other crimes or wrongs or acts by Petitioner. In addition the court denied a fair trial when the court permitted evidence that Petitioner had a prior rape conviction when he was on trial for a current rape case.

2.  Fourteenth Amendment. Petitioner was denied due process of law and a fair trial when the court improperly instructed the jury that it could infer, without proof, that force had been proven because of the victim's alleged fear or duress[.]

11

3.      Fourteenth Amendment. Petitioner was denied a fair trial and his conviction for possession of drugs was not supported by sufficient evidence in violation of the Due Process Clause of the Fourteenth Amendment. In additon [*sic*], the convictions are unsupported by sufficient evidence entered against the manifest weight of the evidence[.]

4.      Sixth Amendment. Petitioner was denied due process of law and a fair trial by reason of the cumulative effect of numerous errors and omissions committed during the course of the trial.

(R. 1 at 5, 7, 8, 10 (capitalization altered).) Respondent filed a return of writ (R. 5) and Ramsey

filed a traverse. (R. 7.)

STANDARDS OF REVIEW

**A.      AEDPA Review**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not

12

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id*. at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

### B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one

13

complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Procedural default is a related but distinct concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams*, 460 F.3d at 806. In determining procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the he or she failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner also may procedurally default a claim by failing to raise the claim in state court, and pursue the claim through the state's "ordinary appellate review procedures," if, at the

14

time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806.

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Id.* (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"

15

*Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

C.     **Cognizable Claims**

To the extent that claims asserted in federal habeas petitions allege state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle*, 456 U.S. at 121 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal citations omitted).

16

The Supreme Court, therefore, "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id*. at 352.

**ANALYSIS**

**A.      Ground for Relief One:** *Trial-Court Error / Evidentiary Rulings*

Ramsey's first ground for relief claims the trial court violated his due process rights by allowing the State to introduce evidence of his prior bad acts. (R. 7 at 2-6.) Specifically, he complains the State "presented extensive evidence that [he] was a major drug trafficker or utilized violence and threats to enforce his authority." (R. 7 at 2.) Ramsey also asserts that the trial court erred by permitting the State to present evidence about his prior rape conviction. (R. 7 at 6-7.) Respondent argues Ramsey's claim relating to evidence about his violent behavior is procedurally defaulted, and his claim relating to evidence of his prior rape conviction is meritless. (R. 5 at 16-15, 20-23.)

**1.      Evidence of prior assaults and criminal activities**

The state appellate court was the last state court to address Ramsey's claim challenging the admissibility of evidence concerning prior assaults and criminal activities. It stated:

> {¶ 50} In the case sub judice, appellant specifically argues that there was extensive testimony from H.S., Fields and Ewers that appellant assaulted people who did not do what they were told and that that [*sic*] numerous law enforcement officers made reference to appellant's criminal exploits. According to appellant, appellee presented evidence that appellant "was a major drug trafficker who utilized violence and threats to enforce his authority."
>
> {¶ 51} As an initial matter, we note that appellant, in his brief, does not state with any specificity or reference to the transcript which testimony is being challenged.
>
> {¶ 52} During opening statements, appellant's counsel stated that the evidence "may, indeed, show that she [H.S.] bought ... drugs" from appellant, that the evidence may show that he was a "big drug dealer from Cleveland" and that 201 Rowland Avenue was a trap house. Trial Transcript at 83–84. During opening

17

statements, appellant's counsel admitted that appellant had sex with H.S., but stated that the case was "about sex for drugs." Trial Transcript at 84. As noted by appellee, appellant did not "paint himself" as a reputable person. We find that appellant "opened the door" to testimony about his character as a drug dealer.

{¶ 53} Moreover, we note that while appellant argues that the trial court erred in allowing H.S., Fields and Ewers to testify that appellant assaulted people who did not do as they were told, appellant, with one exception [fn.1], did not object to such testimony. Our standard of review in this case is therefore plain error. Criminal Rule 52(B) provides that "plain errors or defects effecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph 3 of the syllabus. Based on the overwhelming evidence of guilt as set forth in the statement of facts, we cannot say that the outcome of the trial would have been different had the trial court not allowed such testimony.

FN1: Appellant's objection when appellee questioned H.S. about specifically what happened to her on an occasion when appellant thought that she had taken some of his drugs was sustained.

{¶ 54} Appellant also argues that "numerous law enforcement officers made reference to [appellant's] criminal exploits." During Detective Blust's testimony, he was asked how many "tips" he received in relation to appellant between April of 2013 and March 21, 2014. Trial Transcript at 361. Appellant's counsel then objected and the following discussion took place:

{¶ 55} THE COURT: If it's not related to the drug activity but related to being in town, I am okay with it, but I don't want a trafficking—

{¶ 56} MS. COUCH–PAGE: He said "tips."

{¶ 57} MR. BROWN: We have trafficking and—

{¶ 58} MS. COUCH–PAGE: He asked how many "tips."

{¶ 59} THE COURT: Can you phrase it this way? If you get information and he was in town between ... Well, they can ask questions that are relevant to him being here, because that's an issue regarding whether or not he was residing here or not. So I think they can talk about was he here in Richland County. But I don't want them going into what the tips were about.

18

{¶ 60} MS. COUCH–PAGE: Right. We weren't going to.

{¶ 61} MR. BROWN: I think that's still hearsay. Note my objection.

{¶ 62} THE COURT: Okay.

{¶ 63} Trial Transcript at 361–362.

{¶ 64} Appellee then rephrased the question to ask whether or not Detective Blust had received information that appellant was in and about Richland County often and how many times. After Detective Blust indicated over 40, appellant's counsel objected again on the basis of hearsay and the objection was overruled. Because the issue of appellant's residency in Richland County was at issue with respect to the charge of failure to register with the Richland County Sheriff, we find that the trial court did not abuse its decision in allowing in such testimony. The trial court's decision was not arbitrary, unconscionable or unreasonable. We further note that when Detective Blust subsequently referred, in a response to a question, to appellant "and his crew", counsel objected to the phrase "his crew" and the response was rephrased. Trial Transcript at 366. Similarly, after appellant objected to a question to Detective Blust as to whether H.S. was trying to "take down" appellant, the question was rephrased and no further objections were made. Trial Transcript at 372.

{¶ 65} Based on the foregoing, we find that appellant's due process rights were not violated.

*Ramsey*, 2015 WL 7428725, at *7-9.

Respondent is correct that Ramsey's claim relating to evidence of his prior assaults is procedurally defaulted. As noted above, a federal habeas claim is procedurally defaulted when the state courts did not reach the merits of the claim because the petitioner failed to comply with a state procedural rule. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977). Here, the state court held that Ramsey waived any claim contesting the admissibility of testimony about other acts by failing to object to it, and therefore conducted only a plain-error review of that issue. *Ramsey*, 2015 WL 7428725, at *8. Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the

error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998); *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus. Failure to adhere to this "firmly-established" rule is "an independent and adequate state ground" upon which to find a federal habeas corpus claim procedurally defaulted. *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). And a state court's "plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue . . . ." *Id.*; *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000) ("*Harris* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground.").

Moreover, Ramsey does not offer any argument regarding the cause for, or prejudice resulting from, his procedural default of this claim. Nor does he contend that he is actually innocent such that the default should be excused. Ramsey's claim that the trial court erred by admitting evidence about his prior acts of assault, therefore, is procedurally defaulted.

The state appellate court did, however, reach the merits of Ramsey's claim challenging the admission of evidence about his prior criminal activities. It first noted that Ramsey did not specify exactly what evidence of prior criminal conduct he alleges was admitted in error. *Ramsey*, 2015 WL 7428725, at *8. Nevertheless, the court concluded that the defense's opening statement and trial strategy "opened the door" to testimony of State witnesses regarding his "character as a drug dealer." *Id.* The state court then specifically addressed testimony of

20

Detective Blust, which touched on Ramsey's prior acts and prompted an objection from defense counsel, finding the trial court's decision to allow it "was not arbitrary, unconscionable or unreasonable." *Id.* at *8-9.

Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (noting that federal habeas courts "do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence'") (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). Federal habeas courts presume that state courts correctly interpret state evidentiary law in their evidentiary rulings. *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.) Specifically, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Nonetheless, state-court evidentiary rulings may "rise to the level of due process violations [if they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result[] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. And "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Here, as in state court, Ramsey does not identify which evidence of prior acts he contests. Instead, he provides a general summary of the testimony from numerous State witnesses that

included accounts of his past crimes. (R. 7 at 2-6.) He appears to argue that the cumulative effect of this evidence caused the jury to "prejudge the criminal defendant with a bad general record and deny [him] a fair opportunity to defend a particular charge." (*Id*. at 6.) Beyond this conclusory allegation, however, Ramsey fails to demonstrate that the trial court's admission of this testimony was so prejudicial and fundamentally unfair that it amounted to a denial of due process. Indeed, he does not refute the state appellate court's conclusion that the trial court properly admitted evidence of past criminal conduct because he opened the door to such testimony. Nor does he address the state court's analysis of Detective Blust's testimony.

Petitioner has not cited any Supreme Court precedent demonstrating that the state court ruling was unreasonable or that admission of the evidence in question was either egregious or violates fundamental principles fairness and justice. The court finds that the trial court's admission of evidence concerning Petitioner's past acts was not so fundamentally unfair as to deprive Ramsey of due process.

### 2. Evidence of prior rape conviction

Ramsey further claims the trial court erred by permitting the State to introduce evidence of his prior rape conviction when the defense had offered to stipulate to that fact. (R. 7 at 6-7.) Respondent argues this claim lacks merit. (R. 5 at 20-23.)

The state appellate court, upon reviewing this claim, reasoned:

{¶ 67} Appellant, in his second assignment of error, argues that the trial court violated his right to due process by permitting appellee to present evidence that appellant had a prior rape conviction. Appellant had wanted to stipulate to the same.

{¶ 68} On July 28, 2014, appellant filed a Motion to Suppress/In Limine asking the trial court for an order preventing appellee from introducing any evidence about appellant's prior conviction for rape in 1998. Appellee filed a response to such motion on July 29, 2014, arguing that the use of the prior rape conviction was

necessary in order to prove the elements contained in Count VI2 of the indictment, which was failure of a sexually oriented offender to notify of change of address, a felony of the first degree. At a hearing held on July 29, 2014, appellee argued that the prior conviction was an element of the crime and the trial court noted that "it has to be in the verdict form, because if it's not in the verdict form, then the conviction has to be the lowest level offense ....there has to be some sort of additional finding by the jury to say this is a first-degree felony because he was to register based on a first-degree felony." Trial Transcript at 38. As memorialized in a Judgment Entry filed on August 4, 2014, the trial court stated that it was overruling appellant's motion because "the use of defendant's prior rape conviction is necessary in order to prove the elements contained in Count VI of the indictment ...."

{¶ 69} As an essential element of a crime that must be found by a jury, "a defendant is not entitled to bifurcate proceedings, nor may he waive jury trial on a prior conviction element alone." *State v. Nadock*, 11th Dist. Lake No.2009−L−042, 2010−Ohio−1161, 2010 WL 1058356, ¶ 38, citing *State v. Sweeney*, 131 Ohio App.3d 765, 773, 723 N.E.2d 655 (2d Dist.1999). Neither the state nor the trial court is required to accept a defendant's stipulation to a prior conviction where the prior conviction is an element of the offense. *State v. Smith*, 68 Ohio App.3d 692, 695, 589 N.E.2d 454. (9th Dist.1990)

{¶ 70} Appellant, in support of his argument, cites *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1975). In such case, the defendant was charged with violating a federal statute that prohibited possession of a firearm by anyone with a prior felony conviction. The defendant offered to stipulate that he had a prior felony conviction, and moved to have the prosecution prohibited under Fed.R.Evid. 403 from revealing to the jury the nature and name of that prior felony conviction on the ground that the danger of unfair prejudice outweighed its probative force. The trial court rejected the defendant's offer to stipulate to his prior felony conviction and allowed the prosecution to introduce into evidence a judgment entry disclosing the name and nature of the defendant's prior felony conviction, i.e., assault causing bodily injury.

{¶ 71} After the Ninth Circuit Court of Appeals upheld the trial court's decision, the United States Supreme Court reversed, holding that the trial court had abused its discretion by refusing to accept the defendant's proposed stipulation and admitting into evidence a judgment entry disclosing the name and nature of the defendant's prior felony conviction. The court found that in light of the proposed stipulation, the minimal probative value of the judgment entry revealing the name and nature of the defendant's prior felony conviction was substantially outweighed by the danger of unfair prejudice, and therefore the trial court erred by admitting the judgment entry.

{¶ 72} We find *Old Chief* to be distinguishable from the facts in this case. In the case sub judice, appellee was required to introduce evidence of appellant's prior rape conviction in order to elevate the offense of failure to notify to a first degree felony. If the trial court had accepted appellant's stipulation, the jury would not have heard about appellant's prior conviction and could not have found appellant guilty of the charged offense. Moreover, the trial court gave a limiting instruction to the jury regarding how this evidence was to be considered. The trial court instructed the jury that the rape conviction "should only be considered for this count, this failure to provide notice of his change of address. It should not be considered in any way for the other counts. You consider all of the other evidence except that fact that he has a prior conviction for rape ..." Trial Transcript at 883–884.

{¶ 73} Based on the foregoing, we find that the trial court did not err when it permitted appellee to introduce evidence of appellant's prior conviction for rape.

*Ramsey*, 2015 WL 7428725, at *9-11.

Ramsey first argues that the state court unreasonably applied *Old Chief v. United States*, 519 U.S. 172 (1975). He indicates that the Ohio Supreme Court recently followed *Old Chief* in *State v. Creech*, 150 Ohio St. 3d 540 (Ohio 2016), which he describes as holding that a stipulation of a prior conviction to meet an element of an offense "would now be allowed . . . ." (R. 7 at 7.) As Respondent points out, however, *Old Chief* did not establish a defendant's *due process* right to stipulate to a prior conviction that is an element of an offense; instead, "[t]he principal issue [in that case was] the scope of a trial judge's discretion [to deny such a stipulation] under [Federal Evidence] Rule 403, which authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice . . . .'" *Old Chief*, 519 U.S. at 180. Similarly, the Ohio Supreme Court applied Ohio Evidence Rule 403 in *Creech*, finding the probative value of admitting the full record of the defendant's prior convictions—upon which the weapons charges at issue in that case were based—was outweighed

24

by the danger of unfair prejudice. *Creech*, 150 Ohio St. 3d at 550. *Old Chief*, therefore, does not support Ramsey's due process claim.

Petitioner has not shown that the state court's decision is contrary to clearly established federal law rendered by the United States Supreme Court or an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 413. In addition, the state appellate court here followed applicable Ohio law and upheld the trial court's decision to allow the State to introduce evidence of Ramsey's prior conviction for rape, as it determined the prior conviction was an essential element of the failure-to-register offense and necessary for the jury to find before it could convict him of that crime, under Ohio law. *Ramsey*, 2015 WL 7428725, at *10. As explained above, this court is bound by, and must defer to, the state court's interpretation of state evidentiary law. Moreover, as the state appellate court further noted, the trial court gave a limiting jury instruction regarding this evidence. *Id*. The court finds, therefore, that the trial court's admission of evidence regarding Ramsey's prior conviction was not so fundamentally unfair as to amount to a due process violation. *See, e.g., Dowling v. United States*, 493 U.S. 342, 353 (1990) (finding admission of other acts evidence at issue was not fundamentally unfair, "[e]specially in light of the limiting instructions provided by the trial judge . . . .").

Accordingly, Ramsey's first ground for relief is procedurally defaulted and lacks merit. The court, therefore, recommends a finding that the first ground does not support issuance of a writ of habeas corpus.

## B.      Ground for Relief Two: *Trial-Court Error/Jury Instruction*

In his second ground for relief, Ramsey argues the trial court erred by instructing the jury that it could infer the force element of rape if it found Ramsey had overcome the victim's will by

fear or duress. (R. 7 at 8.) Respondent contends this claim also is procedurally defaulted because

Ramsey failed to object to the challenged jury instruction at trial. (R. 5 at 19-20.)

The last state court to address this claim, the state appellate court, opined:

{¶ 75} Appellant, in his third assignment of error, argues that the trial court erred in instructing the jury that it could infer the force element for rape from evidence that appellant overcame the victim's will by fear or duress.

{¶ 76} Appellant, in the case sub judice, was convicted of rape in violation of R.C. 2907.02(A)(2) which states as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The trial court instructed the jury that "[i]f the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts the elements of force". Trial Transcript at 870.

{¶ 77} Appellant did not object to the jury instruction. Pursuant to Crim. R. 30(A), "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." A failure to object to jury instructions constitutes a waiver of that issue, unless but for the error the outcome of the trial clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983). Under the plain error standard, first there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain, i.e. an obvious defect in the trial proceedings. Third the error must have affected "substantial rights" i.e. the outcome of the trial. *State v. Johnson*, Franklin App. No. 06AP–878, 2007-Ohio-2792.

{¶ 78} The Ohio Supreme Court has advised that Crim. R. 52(B) plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, supra, paragraph three of the syllabus.

{¶ 79} Appellant maintains that the fear or duress language was taken from *State v. Eskridge* 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), a case in which a father appealed after being convicted of raping his four year-old daughter. The court, in *Eskridge*, stated, in relevant part, as follows: "We also recognize the coercion inherent in parental authority when a father sexually abuses his child.["] "* * * Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id*. at 58–59 (citations omitted). According to appellant, the Ohio Supreme Court, in *State v. Schaim,* 65

Ohio St.3d 51, 1992−Ohio−31, 600 N.E.2d 661, "limited *Eskridge* to the context of a child victim."

{¶ 80} In *State v. Rupp*, 7th Dist., Mahoning No. 05 MA 166, 2007−Ohio−1561, the defendant challenged a jury instruction that invoked the "fear or duress" language in a rape case where the twenty-three-year-old victim stated that she had submitted to her rapist out of fear of retaliation if she resisted. The court stated, in *Rupp*, as follows:

> The Court [in *Schaim*] essentially held three things: (1) the almost automatic finding of force or threat of force for children who are raped by those in a position of authority over them does not apply to adults; (2) yet, even in the case of an adult victim, a threat of force can be inferred from the circumstances if the defendant somehow purposefully caused the victim to believe he would use force against her; (3) but, mere past incest does not establish a threat of force where the victim does not testify that she was in fear of physical force. Thus, the *Schaim* case cited by appellant is contrary to his current position.

> Appellant's argument fails to distinguish between the finding of force or threat of force for cases of children raped by those in authority positions [*Eskridge*] ... and the mere ability of a jury to infer a threat of force in all cases where the victim's will is overcome by fear or duress ... if the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred. Nothing in the rape statute requires the threat of force to be direct or express. Thus, threat of force includes both explicit and implicit threats.

{¶ 81} *Id.* at paragraphs 31−32. The court, in *Rupp*, further stated as follows:

> Moreover, other appellate cases have unhesitatingly applied the law set forth in the disputed jury instruction here [the *Eskridge* force language] to cases where there was no position of authority over a child. See, e.g., *State v. Pordash*, 9th Dist. No. 04CA8480, 2004-Ohio-6081 [2004 WL 2600461] (dealing with chiropractor raping patients); *State v. Worrell*, 10th Dist. No. 04AP-410, 2005-Ohio-1521 [2005 WL 736529] (dealing with husband raping wife).

{¶ 82} *Id.* at paragraph 36.

{¶ 83} Moreover, as noted by the court *Pordash v. Hudson*, 388 F. Appx 466, 468 (6th Cir. 2010), "there is no indication that the *Eskridge* language-'as long as it can

27

be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established' *Eskridge,* 526 N.E.2d at 306-is intended to be a distinct force standard that applies only to children."

{¶ 84} Based on the foregoing, we find that the trial court did not commit plain error in instructing the jury as it did.

*Ramsey*, 2015 WL 7428725, at *11-12.

As with his first ground for relief, Ramsey procedurally defaulted this claim when he failed to object to the challenged jury instruction at trial. *See, e.g.*, *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) (failure to adhere to contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted). And, again, the state appellate court's plain-error review of the issue did not waive the default and resurrect the claim. *Id*. Ramsey also offers no argument regarding the cause for, or prejudice resulting from, the default, or that he is actually innocent.

Even if this claim were preserved for federal habeas review, it would fail on the merits. Errors in jury instructions generally do not rise to the level of federal constitutional violations. Although a jury instruction violates due process if it fails to the meet the requirement that the State prove every element of a criminal offense, the Supreme Court has emphasized that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."    *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)). Indeed, "the circumstances that would induce a federal court to overturn the state court determination" regarding a jury instruction "would need to be extraordinary." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990). Ramsey does not demonstrate any such extraordinary circumstances here. He argues only with the state appellate court's interpretation of Ohio case law regarding the "threat of force" language in Ohio's rape

statute. This court is bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). This claim, therefore, also has no merit.

Ramsey's second ground for relief, therefore, is procedurally defaulted and without merit. The court recommends a finding that the second ground does not support issuance of a writ of habeas corpus.

### C.    Ground for Relief Three: *Manifest Weight and Sufficiency of the Evidence*

In his third ground for relief, Ramsey argues his convictions for drug possession were against the manifest weight of the evidence and were not supported by sufficient evidence. (R. 7 at 8-9.) Specifically, he asserts the drugs seized by police belonged to other drug users residing at his house, not him. (R. 7 at 8-9.) Respondent contends this claim lacks merit. (R. 5 at 23-27.)

The state appellate court was the last state court to review this claim, stating:

{¶ 86} Appellant, in his fourth assignment of error, contends that his convictions for drug possession were against the sufficiency of the evidence. In his fifth assignment of error, he argues that his convictions for drug possession were against the manifest weight of the evidence.

{¶ 87} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*. The weighing of the evidence and judging of the credibility of the witnesses is best left to the trier of fact.

{¶ 88} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶ 89} Appellant specifically argues that he was not in possession of the drugs found at 201 Rowland Avenue. R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

{¶ 90} Possession may be actual or constructive. . . . To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. . . . Dominion and control may be proven by circumstantial evidence alone. . . . Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. . . . Ownership of the contraband need not be established in order to find constructive possession. . . . Furthermore, possession may be individual or joint. Multiple individuals may constructively possess a particular item of contraband simultaneously. . . . The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. . . .

{¶ 91} As is stated above, there was testimony at trial that appellant, who was a drug dealer with no job, provided drugs to Michael Ewers, Jessica Fields and others. Fields testified that no one else was allowed to bring drugs into 201 Rowland Avenue and that appellant was in charge of the drugs at that address. She further testified that appellant provided the heroin and crack that were being used on the date of the incident. H.S. testified that she was not permitted to buy drugs from anyone except appellant and that she had obtained drugs from appellant "[f]or as long as I knew him." Trial Transcript at 328. In addition, Mike Ewers testified that he was friends with appellant and bought drugs off of him or stole things for appellant that he traded for drugs. Ewers also delivered drugs for appellant. All of the drugs at 201 Rowland Avenue, according to him, were controlled by appellant who had others sell drugs for him.

{¶ 92} Based on the foregoing, we find that there was sufficient evidence that appellant constructively possessed the drugs found at 201 Rowland Avenue. We further find that the jury did not lose its way in convicting appellant of the two drug possession counts.

*Ramsey*, 2015 WL 7428725, at *12-14 (citations omitted).

The court first notes that a claim regarding the manifest weight of the evidence is based on state law and is therefore not a cognizable ground for federal habeas relief. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt). As to Ramsey's sufficiency claim, the court agrees with Respondent that it lacks merit.

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). A federal habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). In reviewing sufficiency claims, federal habeas courts "do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [their] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Because both *Jackson* and AEDPA apply to Ramsey's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

>When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Ramsey has not met this burden. He makes a similar argument here as he did in state court. He relies on Ohio Rev. Code § 2925.01(K), which provides that possession "means having control over a thing or substance, may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." (R. 7 at 8-9.) And he claims "[i]t can only be inferred" that the "other addicts" who lived in his house purchased the recovered drugs from him and therefore the drugs were in their possession, not his. (R. 7 at 9.)

The state court reasonably found that under Ohio law—which provides that knowledge of the presence of drugs in one's home is sufficient to establish constructive possession of the drugs—the State presented sufficient evidence of Ramsey's knowledge of the drugs' presence in his house to prove constructive possession of those drugs. Ramsey does not argue that any of the court's factual findings are clearly erroneous. Nor does he present any evidence undermining the

32

state court's conclusion that a "rational trier of fact could have found the essential elements of [drug possession] beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.

The state appellate court's decision, therefore, was neither contrary to, nor an unreasonable application of, *Jackson*, and the court recommends that Ramsey's third ground for relief be denied as non-cognizable and meritless.

### D.  Ground for Relief Four: *Cumulative Error*

In his fourth ground for relief, Ramsey asserts that the trial court violated his due process rights through the cumulative effect of its alleged errors. (R. 7 at 9-10.) He does not specify the errors, however. In addition, Respondent correctly argues this claim is not a cognizable ground for relief in habeas. (R. 5 at 27.) The Sixth Circuit has held that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). The court recommends, therefore, that Ramsey's fourth ground for relief be denied as not cognizable on federal habeas review.

#### CONCLUSION

The undersigned recommends that Petitioner's petition for writ of habeas corpus (R. 1) be denied in its entirety, because the claims raised are procedurally defaulted, not cognizable on federal habeas review, and lack merit, as set forth above.


Date:   February 13, 2019                    *s/ David A. Ruiz*
                                              David A. Ruiz
                                              United States Magistrate Judge

33

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).